UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA MAINARDI<br><br>        Plaintiff,<br><br>v.<br><br>TOWNSHIP OF MAPLEWOOD, JERRY GIAIMIS, JOHN DOES 1-10, said names being fictitious,<br><br>        Defendants. | Civil Action No. 2:22-cv-5247<br><br>**CIVIL ACTION**<br><br>**COMPLAINT WITH JURY DEMAND** |

1.  This action seeks redress for the willful, wanton, and intentional violation of the civil rights of a dedicated public servant who helped the people of the Township of Maplewood, only to see Maplewood turn its back on her, violate her religious beliefs, and fire her after years of service.

2.  This complaint seeks to hold Maplewood accountable for that harm it caused to its dedicated servant.

3.  This action is the result of individual actors manipulating the articulation of public servant's religious beliefs to justify discrimination and economic coercion against her. It seeks damages and injunctive relief for Plaintiff and all others similarly situated under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49. ("LAD") and Title VII of the Civil Rights Act ("Title VII").

**PARTIES AND VENUE**

4.  Defendant Township of Maplewood ("Maplewood") a municipal entity of the State of New Jersey, located in the County of Essex. The address for the administration of the Township is 574 Valley Street, Maplewood, NJ 07052.

5. Defendant Jerry Giaimis ("Giaimis") is the Township Administrator for Maplewood, with a principal place of business located at the Maplewood Administration Building, in Maplewood New Jersey, in the County of Essex.

6. Defendants John Does (1-10) are fictitious persons and/or entities who were involved with the implementation of the Maplewood Covid policy, the decision to deny Plaintiff accommodations, the decisions that Plaintiff could not be accommodated, placing Plaintiff on unpaid leave, and terminating her employment.

7. Plaintiff Lisa Mainardi was employed by the Township of Maplewood within the Department of Community Services. She is a 27-year resident of Maplewood in the County of Essex. She and her husband have lived in Maplewood for 27 years and raised their 24- and 17-year-old sons in Maplewood. Plaintiff was employed by the township from 2/15/16 through 12/29/21.

8. Lisa has been a steadfast part of the Maplewood community. Before officially employed by the Township of Maplewood, Plaintiff volunteered in the Cultural Affairs Division in the summer of 2015 where she planned and executed a number of successful events centered around the Maplewood Mandela Project. On 2/15/16 Plaintiff was hired to book and run The Woodland; a township-owned building. As a part time employee, Lisa increased the building's usage and exposure. On 5/1/17, plaintiff was promoted to full-time where she continued to grow exposure and usage of the building for both public events and private rentals. For her outstanding work, the Plaintiff received numerous positive reviews and merit raises.

9. With the division short staffed over the 6 years, Lisa took on other responsibilities to the point where she was working anywhere between 60 and 90 hours a week. 95% of her work was done either in the office where she worked alone, or from home. Plaintiff attended and worked

some evening and weekend events on her own time for which she was not compensated. She would often stop into the buildings to check on staff and event setups before and during the workday and after hours, and more often than not she would do this via video chat on her phone since she was often stuck in the office with a tremendous workload.

10. Daytime, nighttime, and weekend events were constant until March 15, 2020, due to the pandemic. Events during the pandemic included recorded or streamed musical, theater and fundraiser events for the public, and outdoor concerts and performances and celebrations. In September 2020 events resumed with limited attendance indoors; while outdoor, and virtual events continued. For the remainder of 2020 through 2021 events expanded to indoor concerts with doors open for ventilation, small, limited access events such as classes, ticketed time slotted events to limit crowd size and to allow for social distancing as well as numerous outdoor events many of which required masks. During the pandemic, plaintiff adhered to requirements for masking, social distancing, and weekly testing.

11. Throughout her tenure for the township, plaintiff handled contracts, payments, refunds, scheduling of staff, supervising of staff, submitting staff hours for wages, and floor plans -- primarily done alone at her desk in her office. Lisa also wrote press releases, Artists Feature Stories, social media posts, and website posts and arts & culture calendar updates which were prepared primarily from home in evenings and on weekends. As stated, the majority, almost all of her work was performed alone in her office during really long workdays or on her home computer after hours.

12. Lisa worked diligently on month long initiatives such as black history month, women's history month, Asian American Pacific Islander Heritage month, Juneteenth Week and Hispanic Heritage month planning real and virtual events and finding sponsorship dollars and coming up

with ideas and executing and promoting them - such as Windows for Women - a storefront town wide window art exhibit, Headshots for Women – photo shoots to help women going back to work after the pandemic, among many other events and initiatives.

13. Two times over the years her immediate supervisor had left, and Lisa held down the fort and did her job as well as her Supervisor's Job.

14. Lisa was honored in a public virtual township committee meeting for her work on Women's History Month in 2021.

15. On 10/19/21 Defendant Giaimis surprised Lisa and came to speak to plaintiff in her office located in a separate building from town hall. Defendant Giaimis asked about what was needed to make the division run smoothly and told plaintiff that she was to be promoted to head of the division.

16. As a result of Defendant Giaimis and Defendant Maplewood wrongfully denying her religious exemption and, as set forth below, refusing to accommodate her, the promotion did not take place and instead she was put on involuntary unpaid leave and eventually fired.

17. Lisa had found an assistant to help her, unfortunately she was not hired until just before Lisa was escorted out of the building on November 8, 2021.

18. Lisa worked diligently to prepare paperwork instructions and files on the computer and in filling systems prior to November 8th including working 40 hours from Thursday to Monday on her last weekend so that the new assistant could walk in and be able to figure things out.

19. She had made a commitment to the new hire to train her whether she was returned to work or not as she was concerned for her customers. She expected her appeal to come through and her religious accommodation request to be honored.

20. For two months after being put on unpaid leave, Lisa worked really long days and nights on paperwork and training the new hire in real time on the computer from her home while the new hire was in the office. Lisa showed the new hire where to find things, explained how things worked and showed her on the computer virtually how to do contracts, update websites and how to do marketing, the social media including tips and tricks on not only how to do it but who to share with, what should be included, how to schedule them and what times.

21. She proofed agreements new hire had prepared as well as marketing pieces and social media posts. She also trained the new hire how to book events on the calendar, how to keep track in excel spreadsheets, how to handle conflicts and how to negotiate time issues and conflicts between customers.

22. Lisa made virtual introductions to all her contacts to the new hire and provided background information on customers past events and contracts so that hire would be able to easily get in touch with them by cell phones and know exactly how the last conversation had ended. Lisa continued to train the new hire for a total of 6 months. Plaintiff truly thought that she would be returning to work.

23. Her dedication to her customers, fellow staff and the community is evident from her continued help and hours upon hours of work after she was no longer being paid. She did this against her attorney's advice.

24. It is evident that her work could be done remotely as it was done remotely many times over the years as well as for two months after she was put on leave plus the ongoing assistance, she provided remotely for an additional 4 months.

25. On June 22, 2022, the United States Equal Employment Opportunity Commission issued a Notice of Right to Sue in the matter EEOC Charge 17E-2022-00121, *Lisa Mainardi v. Township of Maplewood*, a copy of which is attached hereto as **Exhibit A**.

26. This Complaint is filed within 90 days of the Notice of Right to sue.

27. As set forth herein, this Complaint brings claims under Title VII of the Civil Rights Act.

28. Therefore, pursuant to 28 U.S.C. §1331, this Court has original subject matter jurisdiction over this matter.

29. This Court has personal jurisdiction over Defendants Maplewood and Defendant Giaimis as they have a principal place of business located within the District of New Jersey, within the County of Essex.

30. Thus, this matter is properly venued in the District Court seated in Newark.

## FACTS COMMON TO ALL COUNTS

31. Defendants imposed a condition of employment that required Plaintiff to forego a sincerely held religious belief in violation of the LAD and Title VII.

32. Plaintiff has a sincerely held religious belief that prevented her from receiving the COVID-19 vaccine.

33. By receiving the COVID-19 vaccine, Plaintiff would be foregoing her religious beliefs.

34. By denying her request for a religious exemption from the COVID-19 vaccine policy, Defendants discriminated against Plaintiff and retaliated against her.

35. Specifically, when Plaintiff submitted a request for exemption from the mandatory COVID-19 policy, Defendants caused Plaintiff to suffer an adverse job action by placing her on unpaid leave.

36. As if placing Plaintiff on unpaid leave was not retaliation enough, Plaintiff was then terminated.

37. As discussed in greater detail below, the LAD and Title VII required Maplewood to engage in bona fide interactive process to determine if Plaintiff could perform the essential functions of her job with an accommodation.

38. Maplewood refused to conduct this good faith investigation, in flagrant disregard for LAD and Title VII.

39. Moreover, Maplewood made its decision to refuse to accommodate Plaintiff and fire her by explicitly discriminating against her based on their religious beliefs.

40. In addition to terminating Plaintiff for her exercise of her religious beliefs and rights under the LAD and Title VII, Defendants then doubled down on the discrimination by misrepresenting to the New Jersey Department of Labor, Division of Unemployment, that Plaintiff was never terminated and that she would be returning to work, leading to the denial of her unemployment benefits claim.

41. While Plaintiff's appeal of the unemployment denial based on the false and retaliatory misrepresentations from Defendant remains pending, Defendants willful and knowing retaliatory misrepresentations have continued to harm Plaintiff.

42. During an unemployment appeal hearing for another terminated Maplewood Employee, Defendant Jerry Giaimis, Business Administrator for Maplewood, testified under oath that Maplewood was unable to accommodate employees who sought exemptions because as first responders, they could not be safely accommodated.

43. Defendant Giaimis then was asked if Maplewood was able to accommodate any unvaccinated first responder and he conceded that he granted a medical exemption from the

COVID-19 vaccine requirement to receive two doses of vaccine for a police officer who suffered an adverse reaction to the first dose.

44. Defendant Giaimis was then asked if Maplewood denied requests for any non-responders, meaning Plaintiff, and he testified that he did.

45. When asked why he denied the request for exemption, because Plaintiff was not a first responder and thus did not have such contact with the public, Defendant Giaimis testified that it was important to him that Maplewood employees have a high rate of vaccination to set an example for the public and that if he granted an exemption for Plaintiff, it would lower their perceived vaccination rate.

46. However, as set forth above, Defendant Giaimis was willing to grant exemptions to first responders who sought medical exemptions, but not for any religious exemptions; Maplewood denied all the religious exemption requests.

47. Further, Maplewood has disbanded its Fire Department and formed the South Essex Fire Department with other neighboring towns.

48. The newly formed Fire Department <u>does not</u> mandate the COVID vaccine.

49. Maplewood could have made the same accommodation for Plaintiff, who similarly sought an exemption and accommodation, but refused to do so.

50. By doing so, Maplewood treated Plaintiff, seeking exemption and accommodation based on her religious beliefs, differently from other employees who sought exemptions on other bases, subjecting Plaintiff to disparate and discriminatory treatment based on her religious beliefs.

51. In addition, prior to her termination, Plaintiff had been informed that she would receive a promotion in early 2022 to head of the division, which would come with significantly higher

compensation. Plaintiff had been essentially performing the job responsibilities of the new position for months without additional compensation.

52. By terminating Plaintiff, Defendants Maplewood and Giaimis were able to use their discrimination as a pretext to coerce Plaintiff to perform additional work without compensation, then to terminate her without ever needing to provide Plaintiff with the promised promotion.

53. By making the accommodation for the accommodate Police Officer and Fire Fighter, Maplewood confirmed what every other fire department in the state of New Jersey has determined—unvaccinated first responders can safely work with testing and masking.

54. The idea that unvaccinated employees can be safely accommodated has been well-established across the state and nation.

55. In New Jersey, medical professionals have been working pursuant to a vaccine mandate imposed by Executive Order. These Executive Orders provide that unvaccinated medical professionals can work with direct patient contact with once or twice weekly testing and masking.

56. Across the state, teachers, educators, administrators, and volunteers at schools from pre-k through high school have similarly been required to receive the COVID vaccine. Any unvaccinated employees and volunteers must test weekly for COVID.

57. According to Defendants Giaimis and Maplewood, teachers with direct contact with children can be accommodated with weekly testing, but Plaintiff, cannot.

58. But Maplewood's treatment of the unvaccinated police officer and the unvaccinated Fire Fighter is not an outlier. Unvaccinated Fire Fighters in hundreds of departments and municipalities can safely and without undue hardship perform the essential functions of their job without any accommodations, or with accommodations of either masking when interacting with the public, or routine testing.

59. Even those municipalities that required the vaccine are rolling back those mandates as the State, and the entire country, return back to pre-COVID normalcy.

60. The COVID pandemic has placed great strains on all of us. Most people across this great nation and state stood together, but not the administration of Maplewood. Maplewood instead used COVID as a pretext to violate its most basic legal obligations to Plaintiffs.

61. This Complaint says enough is enough and seeks to hold Maplewood accountable.

**The Policy**

62. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

63. On or about August of 2021, Maplewood required all employees to either be current with COVID vaccination or to be tested for COVID.

64. The Policy was amended on October 19, 2021, and the vaccinate-or-test model was replaced with a mandatory vaccination policy.

65. The Policy—at least on paper—set forth that Maplewood would comply with state and federal law:

> Maplewood Township is committed to providing equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination, and retaliation. As such, Maplewood is committed to complying with all laws protecting employees' religious beliefs and practices. When requested, the Maplewood will provide an exemption/reasonable accommodation for employees' religious beliefs and practices which prohibit the employee from receiving a COVID-19 vaccine or testing protocols, provided the requested accommodation is reasonable and does not create an undue hardship for Maplewood or pose a direct threat to the health and/or safety of others in the workplace and/or to the requesting employee.
>
> To request an Exemption/Accommodation related to the Maplewood's COVID-19 vaccination or testing policy,

> please complete this form, and return it to Human Resources. This information will be used by Human Resources or other appropriate personnel to engage in an interactive process to determine eligibly for and to identify possible accommodations.

66. On October 29, 2021, Plaintiff submitted a request for religious exemption and accommodation.

67. On November 1, 2001, Defendant Giaimis, on behalf of Maplewood, denied Plaintiff's request:

> We are in receipt of your request for an accommodation to the Township of Maplewood's COVID-19 vaccination policy. As you know, the Township adopted an initial policy in August 2021 relating to COVID-19 vaccines and testing. The Township's policy was amended during the October 19, 2021, Township Committee meeting to one the included a mandatory vaccination policy. Please accept this letter as a formal response to your request for accommodation.
>
> In your request, you have cited to a number of objections to the Township's vaccination mandate based on your sincerely held religious beliefs.
>
> Upon careful review of your request, your position, your regular and routine direct contact with members of the public, and the nature of your job, we regret to inform you that your request constitutes an undue burden on the Township. You are in a position where you interact with the public directly, both in the office and at numerous community events. This puts you regularly in close contact with residents and employees as part of your job responsibilities with Maplewood.
>
> Accordingly, we are prepared to offer you a leave of absence through December 31, 2021, at which point we can re-evaluate your request. If you would like to remain in paid status, you may use any personal or vacation leave balances you have available.

68. On November 5, 2021, counsel for Plaintiff submitted an appeal challenging the basis for the denial as Maplewood violated controlling state and federal law, including explicitly the LAD and Title VII.

69. Maplewood never responded, either in writing, or in any other way.

70. On or about December 29, 2021, Defendant Giaimis then wrote to Plaintiff to state that while the November 1, 2021, letter stated that her status on unpaid leave would be re-evaluated on December 31, 2021—Defendant Giaimis preemptively informed Plaintiff that she would no longer be allowed to remain on unpaid leave.

71. Defendant Giaimis was able to peer into the future on December 31, 2021, because he had already determined to discriminate and retaliate against Plaintiff—even though Defendant Giaimis had granted accommodations for the unvaccinated Fire Fighter and an unvaccinated Police Officer, <u>at this exact time</u> because they sought medical exemptions, not religious.

## COUNT I:

## VIOLATION OF LAD: RELIGIOUS DISCRIMINATION

72. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

73. The LAD prescribed requirements that Defendants was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

74. The LAD prohibits an employer, such as Defendants, from retaliating against an employee who asserts their protected rights under the LAD.

75. The LAD protects the rights of persons with sincerely held religious beliefs.

76. The LAD prohibits Defendants from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

77. Upon receipt of the requests for religious exemption from Plaintiff, Defendants placed her on unpaid leave of absence, and then terminated her.

78. By placing Plaintiff on unpaid leave of absence, Defendants retaliated against her in violation of the LAD.

79. By terminating Plaintiff, Defendants illegally retaliated against Plaintiff in violation of the LAD.

80. By making false representations to the NJ Department of Labor, Division of Unemployment Defendants illegally retaliated against her in violation of the LAD.

81. As a result, Plaintiff was damaged.

**WHEREFORE**: Plaintiff demands entry of a judgment awarding:

    a. Compensatory damages;

    b. Punitive damages;

    c. Attorneys' fees and costs of suit; and

    d. Such other relief as the Court may deem proper and just.

## COUNT II:

## VIOLATION OF NJLAD: FAILURE TO ACCOMMODATE

82. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

83. The LAD provides that Defendants must provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

84. The LAD requires Defendants to make a bona fide effort to reach an accommodation for employees who seek exemption.

85. Defendants did not make a bona fide effort to reach an accommodation for Plaintiff.

86. The LAD provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of their position.

87. Lisa was able to perform all of the essential functions of her job with accommodations of masking, social distancing, and working remotely as needed.

88. She performed her job to such a degree that she had been promised a promotion to head of the division.

89. The LAD provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or otherwise allowing you to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

90. Plaintiff is able to perform the essential functions of her job without an undue hardship to Maplewood.

91. Plaintiff is able to perform the essential functions of her job without placing the public in the threat of harm.

92. By refusing to provide accommodations, Defendants violated the LAD.

93. As a result, Plaintiff was damaged.

**WHEREFORE**: Plaintiff demands entry of a judgment awarding:

    a. Compensatory damages;

    b. Punitive damages;

    c.    Attorneys' fees and costs of suit; and

    d.    Such other relief as the Court may deem proper and just.

## COUNT III:

## VIOLATION OF TITLE VII: RELIGIOUS DISCRIMINATION

94. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

95. Title VII prescribed requirements that Defendants were required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

96. Title VII prohibits an employer, such as Defendants, from retaliating against an employee who asserts their protected rights under the LAD.

97. Title VII protects the rights of persons with sincerely held religious beliefs.

98. Title VII prohibits Defendants from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

99. Upon receipt of the requests for religious exemption from Plaintiff, Defendants placed her on unpaid leave of absence, and then terminated her.

100. By placing Plaintiff on unpaid leave of absence, Defendants retaliated against her in violation of Title VII.

101. By terminating Defendants, Maplewood illegally retaliated against Plaintiff in violation of Title VII.

102. By making misrepresentations to the NJ Department of Labor, Division of Unemployment, Defendants illegally retaliated against her in violation of the Title VII.

103. As a result, Plaintiff was damaged.

**WHEREFORE**: Plaintiff demands entry of a judgment awarding:

      a.      Compensatory damages;

      b.      Punitive damages;

      c.      Attorneys' fees and costs of suit; and

      d.      Such other relief as the Court may deem proper and just.

## COUNT IV:

## VIOLATION OF TITLE VII: FAILURE TO ACCOMMODATE

104. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

105. Title VII provides that Defendants must provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

106. Title VII requires Defendants to make a bona fide effort to reach an accommodation for employees who seek exemption.

107. Defendants did not make a bona fide effort to reach an accommodation for Plaintiff.

108. Title VII provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of her position.

109. Title VII provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or otherwise allowing the employee to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

110. Plaintiff is able to perform the essential functions of her job without an undue hardship to Defendants.

111. Plaintiff is able to perform the essential functions of her job without placing the public in the threat of harm.

112. By refusing to provide accommodations, Defendants violated Title VII.

113. As a result, Plaintiff was damaged.

**WHEREFORE**: Plaintiff demands entry of a judgment awarding:

    a. Compensatory damages;

    b. Punitive damages;

    c. Attorneys' fees and costs of suit; and

    d. Such other relief as the Court may deem proper and just.

## COUNT V

## RETALIATION IN VIOLATION OF LAD AND TITLE VII

114. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein

115. LAD and Title VII prohibit Defendants from retaliating against Plaintiff for her assertion of a religious exemption from the COVID-19 vaccination policy.

116. As set forth above, Defendants illegally retaliated against Plaintiff by placing her on unpaid leave and terminating her employment.

117. Further, Defendants illegally retaliated against Plaintiff by making false representations to the NJ Division of Unemployment.

118. As a result, Plaintiff was damaged.

**WHEREFORE:** Plaintiff demands entry of a judgment awarding:

    a.    Compensatory damages;

    b.    Punitive damages;

    c.    Attorneys' fees and costs of suit; and

    d.    Such other relief as the Court may deem proper and just.

## COUNT VI:

## DECLARATORY JUDGMENT

119. Plaintiff repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

120. LAD and Title VII provided for injunctive relief to prevent future violations.

121. Plaintiff is legally entitled to a declaratory judgment that Defendants violated the LAD and Title VII and that an injunction should be issued requiring Defendants to comply with the LAD and Title VII regarding religious exemptions and accommodations to prevent further harm.

**WHEREFORE:** Plaintiff demands entry of a judgment awarding:

    a.    Injunctive relief as set forth herein;

    b.    Attorneys' fees and costs of suit; and

    c.    Such other relief as the Court may deem proper and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 26, 2022                         Attorneys for Plaintiff

                                                     By: *s/ John D. Coyle*
                                                     COYLE LAW GROUP LLP
                                                     John D. Coyle, Esq. (0296362001)
                                                     55 Madison Avenue, Suite 400
                                                     Morristown, NJ 07960
                                                     Tel. (973) 370-0592
                                                     jcoyle@coylelawgroup.com

# Exhibit A



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

June 22, 2022

Ms. Lisa Minardi
c/o John D. Coyle, Esquire
Coyle Law Group
55 Madison Ave.
Suite 400
Morristown, NJ  07960

Re:  EEOC Charge Against Township of Maplewood
     No. 17E202200121

Dear Ms. Minardi:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                    Sincerely,

                                    Kristen Clarke
                                    Assistant Attorney General
                                    Civil Rights Division

                             by     /s/ Karen L. Ferguson
                                    Karen L. Ferguson
                                    Supervisory Civil Rights Analyst
                                    Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Township of Maplewood